**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VACA BRAVA, INC<br>Plaintiff<br><br>vs.<br><br>HACIENDA VACA BRAVA, & STEAK<br>HOUSE, INC.; VICTOR RAMOS,<br>JANE DOE, and THE CONJUGAL<br>PARTNERSHIP CONSTITUTED AMONG<br>THEM; COMPANIES A, B and C;<br>INSURANCE COMPANIES X,Y & Z<br>and JOHN DOE<br><br>Defendants | Civil Núm.09-1633<br><br>Trademark Infringement;<br>Trade Dress<br>Infringement; Unfair<br>Competition; False<br>designation of origin;<br>and Damages |

**VERIFIED COMPLAINT**

**TO THE HONORABLE COURT**:

COMES NOW Plaintiff Vaca Brava, Inc. ("Vaca Brava" or "Plaintiff"), by and through its Counsel, and for its Complaint against Defendant, Hacienda Vaca Brava & Steak House, Inc. ("Hacienda Vaca Brava"), Victor Ramos, Jane Doe, Companies A, B, and C, Insurance Companies X,Y and Z and John Doe, states as follows:

**I.
NATURE OF ACTION**

1.  This is an action to recover for defendants' willful acts of trademark infringement, trade dress infringement, false designation of origin, under 15 U.S.C. § § 1114, 1125(a) (Section 43(a) of the Lanham Act), violations of Article 3 of

the Puerto Rico Trademarks Act (10 L.P.R.A. § 171a), violations of the unfair competition doctrines of Puerto Rico under Article 1802 of the Civil Code of Puerto Rico (31 L.P.R.A. § 5141), and common law trademark infringement and unfair competition.

## II.
## PARTIES

2.  Plaintiff is a Puerto Rico Corporation with its principal place of business at Carr. 771 Km 9.3 Bo. Barrancas, Barranquitas, Puerto Rico 00794.

3.  Upon information and belief Defendant, Toro Bravo is a Puerto Rico corporation having its principal place of business at Carr. 31 Km 19.6, Sector el Caimito, Barrio El Mango, Juncos, Puerto Rico.

4.  Upon information and belief, Victor Ramos, Jane Doe, and the conjugal partnership constituted among them, are the owners and incorporators of the business identified as Hacienda Vaca Brava. Upon information and belief their physical address is Carr. 31 Km 19.6 Sector El Caimito, Barrio El Mango, Juncos, Puerto Rico and their Postal Address is PO Box 463, Juncos, Puerto Rico 00777. Jane Doe is the unknown name of Victor Ramos' wife who is, along with the conjugal partnership constituted among them, owner of Hacienda Vaca Brava. Plaintiff will substitute Jane Doe's fictitious name with the correct name of Victor Ramos' wife as soon as it has knowledge of said name.

5.   Co-defendant Companies A, B & C are corporations that may be responsible to Plaintiff for the facts alleged in the present Verified Complaint, but at this moment their names and addresses are unknown.

6.   Co-defendant Insurance Companies X, Y, & Z are insurance companies that may be responsible to Plaintiff for the facts alleged in the present Complaint, but at this moment their names and addresses are unknown.

7.   Co-defendants John Doe and Jane Doe, are unknown individuals who are o might be responsible to Plaintiff. Their personal information is unknown at this moment.

### III.
### JURISDICTION AND VENUE

8.   This Court has jurisdiction because: (a) this is a civil action arising under the Lanham Act of the United States, 15 U.S.C. § 1051 et. seq., subject matter jurisdiction being conferred under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338; and (b) the state and common law claims are joined pursuant to 28 U.S.C. §§ 1367 and 1338 in as much as those claims are related to the claims in the action with this Court's original jurisdiction and form a part of the same case or controversy.

9.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

IV
## FACTS GIVING RISE TO THIS ACTION

**a. Origin of Plaintiff's Business (Vaca Brava's Valuable Trademarks)**

10. In 2006, Plaintiff opened Vaca Brava, a family owned and highly acclaimed puertorrican cuisine restaurant in Barranquitas, Puerto Rico. For over 3 years, Vaca Brava restaurant has provided high quality food and restaurant services in a unique and original style.

11. Since at least as early as 2006, and long prior to the acts of Defendants as complained of herein, Vaca Brava adopted and has continuously used in commerce various service marks in connection with its restaurant services. [See **Exhibit 1** Declaration of date of first use in commerce within Puerto Rico Trademark Application].

12. In September 28, 2007, Vaca Brava's trademark was filed for registration with the Puerto Rico Department of State and it was approved for publication as trademark on June 17, 2009 with serial number 64888. An application for federal trademark registration is currently pending under serial numbers 77774999 and 77775051, (Collectively the "Marks"). [See **Exhibits 1, 2 and 3**, Puerto Rico trademark application, Puerto Rico Trademark application status and federal trademark application filing receipt for the mark "VACA BRAVA", respectively] A copy of Vaca Brava's trademark and logo is reproduced here:



13.   The Vaca Brava restaurant is the result of a carefully planned and designed restaurant concept, with a unique trade dress, look and feel, and ambience. It is the first restaurant of its kind in Puerto Rico. While developing original ideas for its restaurant, the Plaintiff called upon the services of skillful artisans to reduce to practice Plaintiff's unique and distinctive restaurant trade dress.

14.   Vaca Brava's unique and original restaurant trade dress was unseen prior to the opening of Vaca Brava. Vaca Brava's look and feel combines decorative elements and plates that are unique and were hand crafted by a puertorrican artisan especially for Vaca Brava. Vaca Brava's handcrafted stainless steel serving plates are part of its serving concept, which was designed to create a first and inescapable impression in the client's eyes.

15.   As illustrated in **Exhibits 4** and **5** each design is distinctive. For instance, one of Plaintiff's plate design results of having a portion of the stainless steel plate that attaches vertically and with an angle to the plate base to

create plate extensions that look like bull horns. [See **Exhibit 4**, sample of Stainless Steel plate.]



16.  While  artisan's  assistance  was  beneficial  to  the realization  of  the  plate's  trade  dresses,  the  original  ideas were  solely  those  of  the  Plaintiff.  Each  plate  serves  more  than three  persons  and  the  food  served  is  arranged  and  designed  to create  a  specific  look  to  which  the  plate  name  relates. Following  is  a  depiction  of  some  of  Vaca  Brava's  distinctive plate trade dresses. [See **Exhibit 5**]












17.  Vaca Brava's trade dress includes recognizable and unique characteristics relating to its overall appearance and design. Vaca Brava has unique menus and menu boards, interior design, distinctive grounds and premises (ponies stable, mechanical bull station, gift shops) equipment layout and other methods of trade dress, as well as proprietary formulas and specifications for various food products, including but not limited to recipes for grilled, marinated chicken, fish and meat and other proprietary products which are favorably recognized by consumers. Illustrated here are some of Vaca Brava's distinctive premises. [See also **Exhibit 6**]

**VACA BRAVA'S RESTAURANT PREMISES**









18.  Consumers choose Vaca Brava because of Vaca Brava's high reputation for the quality of its food, the excellent service, and the cleanliness of the restaurant, as well as the uniformity of the dining experience. Consequently, Vaca Brava's proprietary Marks have become emblematic of these qualities to the public at large. As such, the Proprietary Marks are assets of inestimable value to Vaca Brava. In fact, Vaca Brava's trademarks are probably its most valued asset, representing and embodying Vaca Brava's goodwill and favorable reputation.

19.  The restaurant has become quite successful and Vaca Brava has received a great deal of interest in its restaurant trade dress. Indeed, Vaca Brava has become a tourist destination for its unique look and feel, which is constantly commented in web blogs and internet sites such as Facebook. [See **Exhibit 7**, Copy of Vaca Brava's Facebook wall postings]

**b.  Defendants Wrongful Acts**

20.  Defendants opened the Hacienda Vaca Brava Steak House in Juncos, Puerto Rico. As shown herein and in Exhibit 8, Defendants originally named their restaurant Vaca Brava Steak House. [See **Exhibit 8**, photograph of advertising sign and newspaper advertisement indicating soon to open restaurant Vaca Brava Steak house].



21.  Not only did Defendants copied almost identically the name and logo of Vaca Brava's restaurant, but their restaurant concept, look-and-feel, and ambience, is a deliberate attempt to copy the trade dress of the Vaca Brava restaurant. As shown hereinbelow, Toro Bravo's logo is substantially similar to that of Vaca Brava', both with almost identical trade names and embedding as part of their logo a depiction of a raging bull.[See **Exhibit 9**, Depiction of Vaca Brava and Toro Bravo's logo]

 

22.  Toro Bravo's interior design and layout, its premises, details, features, and overall trade dress is substantially and confusingly similar to that of the Vaca Brava restaurant. [See **Exhibit 10**, photographs of both restaurants' trade dress, including a visual representation and comparison of the restaurant's serving plates arrangements and of Defendants' menu]. A comparison among the two shows the similarity and/or identical appearance between both.

**RESTAURANT PREMISES**

**VACA BRAVA**                                    **TORO BRAVO**









**FOOD LAYOUT & PRESENTATION**

VACA BRAVA                                       TORO BRAVO





VACA  BRAVA

TORO  BRAVO





VACA  BRAVA

TORO  BRAVO





VACA  BRAVA

TORO  BRAVO





23. Defendants' Hacienda Vaca Brava or Toro Bravo is virtually an identical imitation of Plaintiff's "Vaca Brava" restaurant down to the smallest detail. The food presentation, waitresses' uniform, property layout, and even the utensils basket and decorative scheme is mimicry of Plaintiffs'. [See **Exhibits 11** depicting various pictures of Toro Bravo's food presentation, entrance and utensils basket; *See also* **Exhibit 12** depicting Toro Bravo's employees uniform; *See also* **Exhibit 13** depicting various pictures of Vaca Brava's food presentation, property layout and employees uniforms; See also **Exhibit 14**, depicting Vaca Brava's utensil basket] It is evident that a comparison between both results in a conclusion of substantial similarity between both. As shown herein and in **Exhibit 12**, Defendants' employees wear the same or substantially similar cow pattern uniforms.

VACA BRAVA                    TORO BRAVO




TORO BRAVO



Additionally, the bar layout and decorative scheme throughout Vaca Brava's restaurant has been pirated by Defendants for use in their restaurant.

24. Defendants also display their food in very similar if not identical manner used in Vaca Brava's restaurant. Further, upon entering Toro Bravo's restaurant, its restaurant layout, decor, and the list of menu items, are substantially similar to those at Vaca Brava's restaurant. [See **Exhibit 10**]. In short, everything about Defendants' restaurant is designed to be an exact rip-off of the popular Vaca Brava's brand and trade dress.

25. In addition, Defendants are utilizing décor and other such presentation and packaging indicia of origin that are substantially similar to the Vaca Brava restaurant, such that the public is likely to be confused or deceived into believing, contrary to fact, that Toro Bravo is owned, licensed, franchised, sponsored, authorized, or otherwise approved by Vaca Brava or is in some way connected or affiliated with Vaca Brava. In fact, as shown in **Exhibit 15**, people have been confused

regarding the origin or source of Toro Bravo's restaurant. Plaintiff has received inquiries as to whether Vaca Brava has moved or opened a new restaurant in Juncos, which has merited responses from Plaintiff to clarify the existence of no affiliation between both establishments. [**Exhibit 15** Facebook wall postings regarding inquiry about relatedness' or endorsement between both restaurants]. More so, one of Plaintiff's representative received a phone call from an official at the "Departamento de Desarrollo Económico y Comercio de Puerto Rico" asking whether Plaintiff was going to include its Barranquita's employees as part of its small business incentive program, when in fact Plaintiff is not part of said incentive program. Plaintiff had to clarify to the official that Vaca Brava in Barranquitas was not related in any manner to Hacienda Vaca Brava in Juncos, which is the business benefiting from said incentive program. This is clearly an instance of confusion as to the source. Also, Plaintiff has received telephone calls from suppliers of Defendants inquiring about Defendants' orders. Upon information and belief, Defendants' have even represented to suppliers to be associated with Plaintiff.

26. Upon information and belief, notwithstanding Plaintiff's well-established rights in the Marks, and well after Plaintiff adopted and began using the Marks (and well after the Marks had become associated in the minds of purchasers and

consumers with Plaintiff) Defendants adopted, began using, and are presently using in commerce the mark "TORO BRAVO" and "VACA BRAVA" also in connection with restaurant services.

27. This is not unknown to Defendants because they had knowledge prior to opening their business of the Vaca Brava restaurant and trade dress. In fact, co-defendant Victor Ramos and Jane Doe personally visited Vaca Brava's restaurant and facilities during the month of March of 2009, and with the intention of gaining access in order to mimic the smallest detail of Vaca Brava's trade dress, they ordered almost every dish of Vaca Brava's menu and took photographs of every detail of the restaurant's decor and trade dress, including its handcrafted and specifically commissioned stainless steel plates, raging bull drawing of the logo and the uniforms of the waitresses, among many others. These acts are intentional and willful and are actionable under applicable law.

28. As a result of this striking similarity, consumers are likely to confuse the origin of the Toro Bravo restaurant with that of Vaca Brava. Plaintiff seeks an injunction and damages to remedy defendants' wanton violation of their intellectual property rights.

29. Plaintiff has spent substantial sums of money promoting its restaurant services under its Marks.

30. As a result of Plaintiff's extensive use, marketing, advertising and promotion of the Marks, Plaintiff's Marks are

widely recognized by the consuming public as indicating a high quality of restaurant services emanating exclusively from Plaintiff, and as such Plaintiff has acquired substantial and valuable goodwill in the Marks.

31.   Upon information and belief, Defendants adopted, used, and are currently using the "TORO BRAVO" and "VACA BRAVA" service mark in connection with restaurant services, namely steak and seafood restaurant services in Puerto Rico (the "Infringing Marks").

32.   Upon information and belief, on or about May 7, 2009, Defendants filed a trademark application for the mark "HACIENDA TORO BRAVO STEAK HOUSE" in the Puerto Rico Trademark Office in connection with restaurant services as application number 65625. [**See Exhibit 16,** Hacienda Toro Bravo & Steak House Puerto Rico trademark Application.]

33.   Upon information and belief, Defendants are in the business of providing restaurant services specializing in steak and seafood and is actually running a restaurant in Juncos Puerto Rico.

34.   Upon information and belief, Defendants first used the Infringing Marks in commerce in connection with its respective services in 2009.

35.   Plaintiff's date of first use of the Marks pre-dates the date of first use of the Infringing Mark by Defendants.

36.   Upon information and belief, Defendants intentionally

and willfully adopted and started using the Infringing Marks in Puerto Rico with full and actual knowledge of Plaintiff's ownership and use of the Marks for identical restaurant services.

37.  Defendants adopted, used and are using the Infringing Marks in Puerto Rico without Vaca Brava's express or implied consent, and without any right to do so. In fact through a cease and desist letter dated March 25, 2009, Defendants were informed of the fact that they were using a confusingly similar name as part of their restaurant business in Juncos. In said letter Plaintiff informed Defendants of the illegality of their actions and of their pending trademark application with the Puerto Rico Trademark Registry. [See **Exhibit 17**, letter sent by Plaintiff dated March 25, 2009] A response to said letter was sent on April 21, 2009, however Defendants' continued using and appropriating of Plaintiff's trade marks and distinctive restaurant trade dress. [See **Exhibit 18**, letter in response to Plaintiff's letter dated April 21, 2009]

38.  Upon information and belief, Defendants adopted, used and continue to use the Infringing Marks in Puerto Rico with the intent to trade and capitalize on the enormous goodwill generated by Plaintiff's extensive and exclusive use of the Marks, as well as consumers' acceptance and recognition of the same.

39.  Defendants' use of the Infringing Marks has already caused confusion, mistake and deception among the relevant consuming public and even suppliers. [**See Exhibit 15**]

40.  Upon information and belief, Defendants are selling and/or offering restaurant services using the Infringing Marks through the same channels of trade as Plaintiff.

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT 15 U.S.C. § 1114(1)
(Against Defendants jointly and severally)

41.  Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 40 hereof.

42.  Plaintiff asserts that Defendant is violating Plaintiff's legal rights and is irreparably injuring and adversely affecting, and will continue to affect Plaintiff's business and the investment Plaintiff has made in the Marks and related goodwill. Defendant's use of the service mark, "TORO BRAVO" and "VACA BRAVA" violates Plaintiff' s rights in its marks pursuant to 15 U.S.C. §§ 1114(1).

43.  Upon information and belief, Defendant's aforesaid acts were undertaken willfully and with the intention of causing confusion, mistake or deception and have, in fact, caused confusion, mistake and deception as to the source, sponsorship, or approval by Plaintiff of Defendant's services.

44.  Defendants' acts create the false and misleading impression that Defendants' goods and services are the same goods and services of Vaca Brava, or associated or connected

with Vaca Brava, or have the sponsorship, endorsement or approval of Vaca Brava.

45. Defendants' act have caused and unless enjoined by this Court will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Vaca Brava's goodwill and reputation, for which Vaca Brava has no adequate remedy at law.

46. The relevant facts herein set forth are enough to conclude that: a) there is similarity between the marks; b) relationship between the parties channels of trade and advertising methods; c) their prospective purchasers are the same; d) there is actual confusion; e) we are dealing with a well known mark; f) and Defendants' is intentionally appropriating the Vaca Brava's Marks.

47. Vaca Brava has no adequate remedy at law in that the damages as set forth above, including danger to the general public in reliance on the reputation of Vaca Brava, the misappropriation and theft of Vaca Brava's Proprietary Marks and its business system, and the consequent injury to consumer recognition and goodwill, cannot be compensated in monetary damages. Under the Lanham Act, irreparable harm to Vaca Brava is presumed to result from Defendants' unauthorized use of Vaca Brava's trade dress.

48.  Defendants have caused and will likely continue to cause substantial injury to the public and Vaca Brava, and Vaca Brava is entitled to a preliminary and permanent injunction, a temporary restraining order and to recover Defendants' profits, actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114(1), 1116(a), 1117(a), in an amount not less than $100,000.

49.  Plaintiff has no adequate remedy at law.


**COUNT II**
**FEDERAL TRADE DRESS INFRINGEMENT**
(Against Defendants jointly and severally)

50.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 49, above, and further states:

51.  This is an action for trade dress infringement, in violation of 15 U.S.C. § 1125.

52.  Vaca Brava restaurant is identified by signs, exterior appearance, menus, menu boards, color schemes, equipment layout, design, packaging, containers, and other items which the public has come to associate with the Vaca Brava restaurant.

53.  Defendants, as set forth above, is utilizing a trade dress that is identical or confusingly similar to Vaca Brava's trade dress, which constitutes a false designation of the origin of Defendants' restaurant, which is likely to cause confusion, mistake, or deception to the public as to the affiliation, connection, or association of Defendants' restaurants with the

Vaca Brava restaurant operated by Vaca Brava. Such adoption of Vaca Brava's trade dress violates 15 U.S.C. § 1125.

54. As previously set forth above, Hacienda Vaca Brava's continued operation of the The Toro Bravo restaurant has caused and will continue to cause Vaca Brava significant and irreparable injury.

55. Vaca Brava has no adequate remedy at law in that the damages as set forth above, including danger to the general public in reliance on the reputation of Vaca Brava, the misappropriation and theft of Vaca Brava's Proprietary Marks and its business system, and the consequent injury to consumer recognition and goodwill, cannot be compensated in monetary damages. Under the Lanham Act, irreparable harm to Vaca Brava is presumed to result from Defendants' unauthorized use of Vaca Brava's trade dress.

56. Defendants have caused and will likely continue to cause substantial injury to the public and Vaca Brava, and Vaca Brava is entitled to a preliminary and permanent injunction, a temporary restraining order and to recover Defendants' profits, actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114(1), 1116(a), 1117(a), in an amount not less than $100,000.

## COUNT III
### FALSE DESIGNATION OF ORIGIN AND
### FEDERAL UNFAIR COMPETITION 15 U.S.C. § 1125(a)(1)(A)
(Against Defendants jointly and severally)

57.  Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 56 hereof.

58.  Defendants' use of the marks "TORO BRAVO" and "VACA BRAVA" is likely to cause confusion, or to cause mistake, or to deceive purchasers and potential purchasers as to the affiliation, connection or association of Defendants with Plaintiff or as to the source or origin of the services rendered by Defendants by reason of the fact that purchasers are likely to believe that Defendants' services originate from, or are in some way properly connected with, approved by, sponsored by, or endorsed by Plaintiff.

59.  Defendants' aforementioned acts misrepresent the origin, nature, characteristics or qualities of it's or Plaintiff's services or commercial activities. Defendants' aforementioned activities constitute a false designation of origin and false or misleading descriptions or representations of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A).

60.  Upon information and belief, Defendants' aforesaid acts were undertaken willfully and with the intention of causing confusion, mistake or deception.

61.  By reason of the acts of Defendant alleged herein,

Plaintiff is suffering and will continue to suffer irreparable damage and, unless Defendant is restrained from continuing its wrongful acts, the damage to Plaintiff will increase.

62.  Vaca Brava has no adequate remedy at law in that the damages as set forth above, including danger to the general public in reliance on the reputation of Vaca Brava, the misappropriation and theft of Vaca Brava's Proprietary Marks and its business system, and the consequent injury to consumer recognition and goodwill, cannot be compensated in monetary damages. Under the Lanham Act, irreparable harm to Vaca Brava is presumed to result from Defendants' unauthorized use of Vaca Brava's trade dress.

63.  Defendants have caused and will likely continue to cause substantial injury to the public and Vaca Brava, and Vaca Brava is entitled to a preliminary and permanent injunction, a temporary restraining order and to recover Defendants' profits, actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114(1), 1116(a), 1117(a), in an amount not less than $100,000.

64.  Plaintiff has no adequate remedy at law.

### COUNT IV
**WILLFUL TRADEMARK INFRINGEMENT** <u>15 U.S.C. §1117</u>
(Against Defendants Victor Ramos, Jane Doe and the conjugal partnership constituted among them)

65.  Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 64 hereof.

66. Co-Defendants Victor Ramos, Jane Doe and the conjugal partnership constituted among them are jointly and severally liable along with Defendants to Plaintiff for willful trademark and trade dress infringement.

67. Upon information and belief, co-defendants Victor Ramos and Jane Doe personally visited Vaca Brava's restaurant and facilities during the month of March of 2009, and with the intention of gaining access in order to mimic the smallest detail of Vaca Brava's trade dress they ordered almost every dish of Vaca Brava and took photographs of every detail of the restaurant's decor and trade dress, including its handcrafted and specifically commissioned stainless steel plates, raging bull drawing of the logo and the uniforms of the waitresses, among many others. Upon information and belief these acts were performed at a date prior to the incorporation of Hacienda Vaca Brava & Steak House and co-defendants acted in their personal capacity.

68. Section 1117 of the Trademark Act establishes that proof that trademark infringement was unlawful, deliberate, or calculated is relevant to proving infringement by likelihood of confusion and to the recovery of remedies, such as profits of the infringer and attorneys fees, as well as establishing counterfeiting. While willful infringement is not necessary to prove trademark infringement, proof of willful or calculated behavior may raise the presumption of a likelihood of confusion.

See. <u>Paddington Corp. v. Attiki Importers</u>, 996 F 2d 577, 586, 27 USPQ 2d 1189, 1195 (2d Cir. 1993).

69. Defendants have acted willfully and have caused irreparable injury to Plaintiffs.

70. Defendants' foregoing acts constitute a violation of section 1117 of the Trademark Act, therefore Plaintiff is entitled to an accounting of profits and attorneys fees pursuant to 15 U.S.C. §1117.

71. By reason of the acts of Defendants alleged herein, Plaintiff is suffering and will continue to suffer irreparable damage and, unless Defendant is restrained from continuing its wrongful acts, the damage to Plaintiff will increase.

72. Vaca Brava has no adequate remedy at law in that the damages as set forth above, including danger to the general public in reliance on the reputation of Vaca Brava, the misappropriation and theft of Vaca Brava's Proprietary Marks and its business system, and the consequent injury to consumer recognition and goodwill, cannot be compensated in monetary damages. Under the Lanham Act, irreparable harm to Vaca Brava is presumed to result from Defendants' unauthorized use of Vaca Brava's trade dress.

73. Defendants have caused and will likely continue to cause substantial injury to the public and Vaca Brava, and Vaca Brava is entitled to a preliminary and permanent injunction, a temporary restraining order and to recover Defendants' profits,

actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114(1), 1116(a), 1117(a), in an amount not less than $100,000.

74.   Plaintiff has no adequate remedy at law.

**COUNT V.**
**TRADEMARK INFRINGEMENT AND**
**UNFAIR COMPETITION UNDER PUERTO RICO LAW**
(Against Defendants jointly and severally)

75.   Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 74 hereof.

76.   Plaintiff is the prior user in commerce of its VACA BRAVA trademark and design for which it has already been approved publication for registration and which trademark is pending receipt of certificate of registration.

77.   Defendant's use of the marks "TORO BRAVO" and "VACA BRAVA" violates state trademark rights insofar as it constitutes trademark infringement, creates confusion as to the source, misappropriation of Plaintiff's goodwill, and unfair competition under Puerto Rico Law.

78.   Upon information and belief, Defendant's aforesaid acts were undertaken willfully and with the intention of causing confusion, mistake or deception.

79.   Defendant's acts complained of above constitute unfair methods of competition in the conduct of trade or commerce in that: a) such acts enable and will continue to enable Defendants to obtain the benefit of, and trade on, the

goodwill of the Vaca Brava's marks; b) such acts damage and will continue to damage Vaca Brava's goodwill in that Vaca Brava does not have control over Defendants' business, over the quality of its products and/or over the quality of its services; c) such acts have caused and are likely to continue to cause confusion, mistake or deception of the public; and d) such acts will result in the unjust enrichment of co-Defendants.

80. Defendants' negligent or intentional acts have caused Vaca Brava to suffer injury and damages, including loss of income, loss of reputation and goodwill, the costs of this litigation and more.

81. Such acts of Defendants' are greatly and irreparably damaging to Vaca Brava and will continue to be greatly and irreparably damaging to Vaca Brava unless enjoined by this Court, and Plaintiff is without an adequate remedy at law.

82. Defendants' foregoing acts constitute a violation of Article 3 of the Puerto Rico Trademark Act, 10 L.P.R.A. §171a.

83. Section 3 of act No. 77, 10 PR Laws Ann. § 259, provides that unfair methods of competition, as well as unjust and misleading commercial practices are illegal.

84. Defendants' use of Plaintiffs marks, and trade dress is meant to take advantage of Vaca Brava's goodwill and reputation, and is an unfair method of competition. *See* <u>Posadas de Puerto Rico v. Sands Hotel & Casino</u>, 131 D.P.R. 21, 36 (1992).

85. Defendants' intentional or negligent violation of Section 3 of Act No. 77 constitutes fault or negligence as those terms are defined in Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. 5141, and those acts have caused Vaca Brava to suffer the injury and damages identified above.

86. Therefore, pursuant to said Art. 1802, co-Defendants are obligated to indemnify and repair all the damages to Vaca Brava.

87. By reason of the acts of Defendants alleged herein, Plaintiff is suffering and will continue to suffer irreparable damage and, unless Defendant is restrained from continuing its wrongful acts, the damage to Plaintiff will increase.

88. Defendants have caused and will likely continue to cause substantial injury to the public and Vaca Brava, and Vaca Brava is entitled to a preliminary and permanent injunction, a temporary restraining order and to recover Defendants' profits, actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114(1), 1116(a), 1117(a), in an amount not less than $100,000.

89. Plaintiff has no adequate remedy at law.

**COUNT VI**
TEMPORARY RESTRAINING ORDER
**PRELIMINARY AND PERMANENT INJUNCTION**

90. Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 86 hereof.

91. Considering the above detailed facts as Verified herein by Plaintiff, Vaca Brava is entitled to temporary restraining order, a preliminary and a permanent injunction order instructing Defendants to estrained from: a)from utilizing the trademarks "Vaca Brava" or the confusingly similar trademark "Toro Bravo" or any derivative or shorthand notation thereof, or the term "Toro", "Vaca" or any other term associated with cattle or similar thereto, in conjunction with the word "Brava" or "Bravo" in connection with restaurant services (the "Marks"), particularly restaurant services dedicated to grill meat, or typical puertorrican food, which would give rise to a likelihood of confusion as to the source of such goods and services as those being offered by Plaintiff; namely restaurant services; b)from reproducing and copying Vaca Brava's unique and distinctive specifically commissioned stainless steel serving plates, designed to create a unique and distinctive tridimensional design for its food presentation and display; c)from reproducing and copying Vaca Brava's unique and distinctive food presentation trade dress, when serving, in its menu, and in any other form or means now known or to become known; d) from willfully and unlawfully trading upon Vaca Brava's goodwill and reputation through its unauthorized use of Vaca Brava's trade dress and décor. More particularly, enjoining Hacienda Vaca Brava from serving, displaying and arranging their food using Vaca Brava's distinctive food presentation trade

dress, among which Plaintiff has preliminary identified the following: (1) El Fajazo del Toro; (2) La Costilla del Vaquero; (3) La Paella Del Toro; (4) El Trio de Espadas; Todo el Toro, (5) El Pollo Por el Toro; (6) El Chillo por el Toro; e)from willfully and unlawfully trading upon Vaca Brava's goodwill and reputation through its unauthorized use of Vaca Brava's trade dress associated with its distinctive specifically commissioned stainless steel serving plates, designed to create a unique and distinctive tridimensional design; f) from willfully and unlawfully trading upon Vaca Brava's goodwill and reputation through its unauthorized use of Vaca Brava's trade dress regarding its restaurant layout, premises (mechanical bull station, ponies station,), waitresses uniforms, decoration, table cloth, basket or utensils, bar, and unique birthday celebration, including its distinctive and unique birthday song arrangement and sound; among others; g) from  soliciting   any business under the Marks; h) from  passing  themselves off  as being associated with the Plaintiff; i) from  registering   in their own name any of the Marks; and j) from  committing   any other unfair business practices directed towards obtaining for themselves the business and customers of the Plaintiff;

92. Defendants' aforesaid acts have caused Vaca Brava to suffer injury and damages of such a nature that they could not be adequately compensated by an award of monetary damages alone.

93. Said illegal acts are greatly and irreparably damaging to Vaca Brava and will continue to cause great and irreparable damages, unless enjoined by this Honorable Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

94. Because an award of monetary damages cannot fully and adequately compensate Vaca Brava for its losses, Vaca Brava is without an adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court declare and a judgment be entered that:

1. Defendants' use of the mark "TORO BRAVO" or "VACA BRAVA" violates and infringes on Plaintiff's trademarks.

2. Defendants' use of the mark "TORO BRAVO" or "VACA BRAVA" and VACA BRAVA's restaurant trade dress is confusingly similar and conflicts with Plaintiff's use of its service mark, "VACA BRAVA" and its trade dress.

3. Defendants, its officers, agents, servants, employees, attorneys, parents, subsidiaries and related companies and all persons acting for, with, by, through or under them, and each of them, be preliminarily and thereafter permanently enjoined and restrained from:

   a.   from utilizing the trademarks "Vaca Brava" or the confusingly similar trademark "Toro Bravo" or any derivative or shorthand notation thereof, or the term "Toro", "Vaca" or any other term associated with

cattle or similar thereto, in conjunction with the word "Brava" or "Bravo" in connection with restaurant services (the "Marks"), particularly restaurant services dedicated to grill meat, or typical puertorrican food, which would give rise to a likelihood of confusion as to the source of such goods and services as those being offered by Plaintiff; namely restaurant services;

b.   from reproducing and copying Vaca Brava's unique and distinctive specifically commissioned stainless steel serving plates, designed to create a unique and distinctive tridimensional design for its food presentation and display;

c.   from reproducing and copying Vaca Brava's unique and distinctive food presentation trade dress, when serving, in its menu, and in any other form or means now known or to become known;

d.   from willfully and unlawfully trading upon Vaca Brava's goodwill and reputation through its unauthorized use of Vaca Brava's trade dress and décor. More particularly, enjoining Hacienda Vaca Brava from serving, displaying and arranging their food using Vaca Brava's distinctive food presentation trade dress, among which Plaintiff has preliminary identified the following: (a) El Fajazo del Toro; (b)

La Costilla del Vaquero; (c) La Paella Del Toro; (d) El Trio de Espadas; Todo el Toro, (e) El Pollo Por el Toro; (f) El Chillo por el Toro;

e.  from willfully and unlawfully trading upon Vaca Brava's goodwill and reputation through its unauthorized use of Vaca Brava's trade dress associated with its distinctive specifically commissioned stainless steel serving plates, designed to create a unique and distinctive tridimensional design;

f.  from willfully and unlawfully trading upon Vaca Brava's goodwill and reputation through its unauthorized use of Vaca Brava's trade dress regarding its restaurant layout, premises (mechanical bull station, ponies station,), waitresses uniforms, decoration, table cloth, basket or utensils, bar, and unique birthday celebration, including its distinctive and unique birthday song arrangement and sound; among others;

g.  from soliciting any business under the Marks;

h.  from passing themselves off as being associated with the Plaintiff;

i.  from registering in their own name any of the Marks; and

j. from committing any other unfair business practices directed towards obtaining for themselves the business and customers of the Plaintiff;

4. Defendants be directed to file with the Court and serve on Plaintiff, within fifteen (15) days after issuance and service of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction, and that Defendant be further directed to show positive proof that its services no longer use the "VACA BRAVA" or "TORO BRAVO" designation, or any similar designation, alone or in combination with other words or symbols confusingly similar to Plaintiff's "VACA BRAVA" service mark.

5. Plaintiff's use of the mark, "VACA BRAVA" pre-dates Defendant's use of the mark VACA BRAVA" or "TORO BRAVO" and therefore Defendant's should not be permitted access to registration of its alleged marks.

6. Plaintiff be awarded its damages incurred as a result of Defendant's infringement and unfair competition and other acts complained of herein, together with such additional sums as the Court may assess.

7. An accounting be ordered for determination of and payment to Plaintiff of all profits realized by Defendants by reason of its unlawful acts alleged herein.

8. Plaintiff be awarded treble damages based upon Defendant's willful infringement.

9. Plaintiff be awarded it's reasonably attorneys' fees, taxable costs, and disbursements of this action, pursuant to 15 U.S.C. §1117, based on Defendants' willful infringement.

10. Plaintiff have such other and further relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any services provided by or promoted by Defendant are authorized by Plaintiff or related in any way to Plaintiff or its services.

11. Plaintiff requests a jury trial on all issues so triable.

### UNSWORN STATEMENT UNDER PENALTY OF PERJURY

I, Juan Carlos Cintrón Berrios, of legal age, married, entrepreneur, and resident of Puerto Rico, hereby state under penalty of perjury, pursuant to the Laws of the United States of America, 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint and its supporting exhibits and that, to the best of my knowledge and belief and/or pursuant to the information and documents in possession of Vaca Brava, all allegations herein contained are true and correct.

_____
**Juan Carlos Cintrón Berríos**


RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 7th day of July of 2009.

**SEPULVADO & MALDONADO, PSC**
Attorneys for Vaca Brava,Inc.
Citibank Tower, Suite 1900
252 Ponce de León Avenue
San Juan, P.R. 00918
Tel. 787.765.5656
Fax 787.294.0073


S/Lee Sepulvado Ramos
Lee Sepulvado-Ramos
USDC-PR-211912
leesepulvado@gmail.com